# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| KAYLA SHOULARS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 3:20-cv-00156-TCB |
| ) | |
| RAM SHAI RAM, INC. d/b/a/ ) | |
| BOWDON KWIK SHOP, VARSHA ) | |
| PATEL, and TUSHAR PATEL, ) | |
| ) | |
| Defendants. ) | |

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND TO DISMISS WITH PREJUDICE

Plaintiff, KAYLA SHOULARS ("Plaintiff"), and Defendants, RAM SHAI RAM, INC. d/b/a BOWDON KWIK SHOP, VARSHA PATEL, and TUSHAR PATEL ("Defendants") (collectively, the "Parties"), by and through their undersigned counsel, hereby move for approval of the Parties' Settlement Agreement and dismissal of Plaintiff's claims with prejudice, stating as follows:

1.  Plaintiff filed her Complaint in this case on August 25, 2020, seeking overtime compensation under the Fair Labor Standards Act ("FLSA") and alleged unpaid wages [Doc. 1]. On November 19, 2020, Plaintiff filed her Amended Complaint [Doc. 9] seeking the same relief against the same Defendants.

2. A bona fide dispute existed between the Parties, as Plaintiff claimed an entitlement to unpaid overtime wages, and Defendant maintained that the Plaintiff did not work any overtime and has been compensated fully for any and all hours Plaintiff worked at Defendants' business.

3. Following the informal exchange of documents and information, the Parties participated in settlement negotiations, which have resulted in a Settlement Agreement and General Release ("Agreement"), a copy of which is attached hereto as **EXHIBIT A**. This Agreement was fully executed as of August 19, 2021.

4. Under the Agreement, Defendants will pay Plaintiff a total of $1,500.00 in consideration of her underlying claims for alleged unpaid overtime and regular wages, and liquidated damages, in exchange for a release and the dismissal of all of Plaintiff's claims.[1] Plaintiff has confirmed that this amount provides all possible relief for claims for unpaid overtime under the FLSA, based on her documented work hours. Thus, Plaintiff believes that the settlement amounts can be properly characterized as settlement "without compromise."

5. In addition to the payment outlined in Paragraph 4 above, Defendants will pay to Plaintiff's counsel $1,500.00 for attorneys' fees and costs. Undersigned

---

[1] Plaintiff will receive $750 in alleged unpaid overtime and regular wages and $750 in liquidated damages.

counsel avers that the attorneys' fee portion of the settlement was negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to the Plaintiff. The Parties jointly submit that the settlement reached herein is fair and reasonable and in fact is less than Plaintiff's actual lodestar fees and expenses.

6. In accordance with the Eleventh Circuit precedent *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350, 1353 (11th Cir. 1982), and the Local Rules of this Court, the Parties request that the Court approve their Agreement.

7. In support of this Motion, the Parties stipulate that: (a) the settlement of this matter is fair and reasonable; (b) the attorneys' fees to be paid by Defendants to resolve Plaintiff's claims under the FLSA, are fair and reasonable, and were negotiated separately from the amount for Plaintiff's underlying claims; and (c) there was no undue influence, overreaching, collusion, or intimidation in reaching the settlement.

## **MEMORANDUM OF LAW**

Pursuant to the law of this Circuit, judicial review and approval of this tentative settlement provides final and binding effect to an agreement to settle a compromise of a claim under the FLSA. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food Stores,* there are only two ways in which back wage claims arising under the FLSA

3

can be settled or compromised by employees. First, under Section 216(c) of the FLSA, the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under FLSA Section 216(b) to recover unpaid overtime. When employees bring a private action for unpaid overtime under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. *Id*. at 1352-53.

Before approving an FLSA settlement, the court must ensure that it is "a fair and reasonable resolution of a bona fide dispute." *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

In determining whether the parties' Agreement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible discovery; and (6) the opinions of counsel. *See Leverso v. South Trust Bank of Ala.,*

*Nat. Assoc.*, 18 F. 3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287, at *2-3 (M.D. Fla. Jan. 8, 2007). There is a strong presumption in favor of finding a settlement fair. *Hamilton, 2007 U.S. Dist.* LEXIS at *2-3; *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Here, the parties jointly submit there has been sufficient investigation and exchange of information to allow counsel for Plaintiff and Defendants to evaluate the Parties' claims and defenses and make recommendations to each party in agreeing upon the resolution of Plaintiff's claims as set forth in their Agreement.

After exchanging information concerning Plaintiff's employment, working hours and pay, engaging in settlement negotiations which lasted over several months, and in order to avoid the uncertainties and costs of dispositive motions and trial, a compromise has been agreed upon with Plaintiff receiving a recovery acceptable to her (which takes into account Plaintiff's personal interest in ending litigation at this stage and the inherent uncertainties of litigation).

Moreover, Plaintiff is fully apprised of her potential damages and liquidated damages were she to prevail, is represented by counsel, and has voluntarily chosen to accept this compromise. The Plaintiff has been advised that if she proceeds in this matter, she may prove all of the damages, or a jury may choose to credit the

employer's position, and that she may receive a lesser, or no, recovery. In light of this uncertainty, Plaintiff agrees that the $750.00 she is receiving for damages on her unpaid overtime and regular wage claims, plus an equal amount of $750.00 in liquidated damages in this settlement constitutes a reasonable and informed compromise of her claims. Indeed, after reviewing the available time and pay records, Plaintiff believes she is receiving all monies potentially due to her under the FLSA under the settlement.

Accordingly, in light of Defendants' agreement to pay Plaintiff the total sum of $1,500, separate and apart from her attorneys' fees, including consideration for her unpaid wages and liquidated damages, the parties stipulate that their Agreement is fair and reasonable.

Further, the attorneys' fees and costs are not a percentage of Plaintiff's recovery in this case, such that there is no correlation between the amount of monetary consideration being paid to Plaintiff and the amount of attorneys' fees and costs being paid by Defendant on Plaintiff's behalf. *See* 29 U.S.C. §216(b); *Kreager v. Solomon & Flanagan, P.A.*, 775 F. 2d 1541, 1542 (11th Cir. 1985). Rather, Plaintiff's attorneys' fees and costs were claimed by Plaintiff and her counsel separate and apart from the amounts sought by Plaintiff for her underlying claims, and were negotiated independently.

As Judge Presnell explained in *Bonetti v. Embarq Management Co.*, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009), where a plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to her attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

The compromise agreed upon by the parties resolves all of Plaintiff's claims for attorneys' fees and Plaintiff has no responsibility to her counsel for any out of pocket sums. Importantly, throughout the entirety of the litigation in this case, Plaintiff was represented by competent counsel with experience in labor and employment law and Defendants also have been represented by experienced counsel. The parties further advise the Court that their settlement agreement submitted herewith includes every term and condition of the Parties' settlement.

**WHEREFORE**, Plaintiff and Defendants respectfully move for entry of an Order, ordering the following:

(1) Approving the Parties' settlement of the instant disputed claims as fair and reasonable;

(2) Dismissing this action with prejudice; and

(3) Any other relief that this Court deems just and appropriate.

Respectfully submitted, this 20th day of August, 2021.

| | |
|---|---|
| *s/ William S. Cleveland* <br> William S. Cleveland <br> Georgia Bar No.: 721593 <br> *billy@poolehuffman.com* <br> POOLE HUFFMAN, LLC <br> 3562 Hambersham at Northlake <br> Building J, Suite 200 <br> Tucker, Georgia 30084 <br> Tel: 404-373-4008 <br> Fax: 888-709-5723 <br><br> *s/ Dustin L. Crawford* <br> Dustin L. Crawford <br> Georgia Bar No.: 758916 <br> *dcrawford@pcwlawfirm.com* <br> Parks Chesin & Walbert, P.C. <br> 75 Fourteenth Street, NE, Suite 2600 <br> Atlanta, Georgia 30309 <br> Tel: 404-873-8000 <br> Fax: 404-873-8050 <br><br> *Attorneys for Plaintiff* | *s/ Gregory R. Fidlon* <br> Gregory R. Fidlon <br> Georgia Bar No.: 259317 <br> *greg@fidlonlegal.com* <br> FIDLON LEGAL, PC <br> 3355 Lenox Road, Suite 750 <br> Atlanta, Georgia 30326 <br> Tel: 844-529-4967 <br> Fax: 844-529-4329 <br><br> *Attorneys for Defendants* |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| KAYLA SHOULARS,       )<br>                                    )<br>           Plaintiff,         )<br>                                    )           CIVIL ACTION NO.:<br>v.                                )           3:20-cv-00156-TCB<br>                                    )<br>RAM SHAI RAM, INC. d/b/a/  )<br>BOWDON KWIK SHOP, VARSHA )<br>PATEL, and TUSHAR PATEL,   )<br>                                    )<br>           Defendants.      ) | |

## L.R. 7.1 CERTIFICATION AND CERTIFICATE OF SERVICE

I hereby certify that this document has been prepared in Times New Roman 14-point font, which is one of the font and point selections approved by the Court in L.R. 5.1.

I hereby certify that I have this 20th day of August, 2021 electronically filed this JOINT NOTICE OF SETTLEMENT with the Clerk of Court using the CM/ECF system, which will send electronic notification to all participating counsel of record.

*s/ Gregory R. Fidlon*
Counsel for Defendants

# EXHIBIT A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

WHEREAS, Kayla Shoulars ("Plaintiff" or "Releasor") worked for Ram Shai Ram, Inc. d/b/a Bowdon Kwik Shop ("Defendant" or "Ram Shai Ram") from January 2016 through October 2017;

WHEREAS, Plaintiff filed an action (the "Action") captioned, *Kayla Shoulars v. Ram Shai Ram, Inc. d/b/a Bowdon Kwik Shop, Varsha Patel, and Tushar Patel*, Case No. 3:20-cv-00156-TCB, in the United States District Court for the Northern District of Georgia (the "Court"), asserting claims against Ram Shai Ram, Varsha Paten and Tushar Patel (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act and breach of contract;

WHEREAS, the parties desire to settle any and all disputes between them, without admitting liability or fault, including but not limited to all claims asserted in the Action;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties execute this Agreement, agreeing as follows:

I.   **PARTIES:** This document sets forth the terms and conditions of the Settlement Agreement and General Release (hereinafter "Agreement") by and between Plaintiff and Defendants. The term "Releasees" used herein shall include Ram Shai Ram, and all of its parents, subsidiaries, affiliates, members, owners, shareholders, employees, agents, insurers, and attorneys, including Varsha Patel and Tushar Patel, together with their predecessors, successors and assigns, both jointly and severally.

II.  **PAYMENT AND CONSIDERATION:**

   A. In consideration of the release and other obligations entered into by Plaintiff pursuant to this Agreement, and obtaining from the Court an Order approving this Agreement and dismissing the Action with prejudice, Ram Shai Ram agrees that, after this Agreement has been fully-executed, it will pay Plaintiff the total amount of $3,000.00 within 10 business days following the Court's issuance of an Order approving this Agreement and dismissing the Action with prejudice, as follows:

   1. A check in the amount of $750.00, less normal payroll withholdings, for alleged back pay, payable to Kayla Shoulars and reported on an IRS Form W-2;

   2. A check in the amount of $750.00 for alleged liquidated damages, payable to Kayla Shoulars and reported on an IRS Form 1099; and

   3. A check in the amount of $1,500.00 for litigation expenses, costs and attorneys' fees, payable to Parks, Chesin & Walbert, P.C. and reported on an IRS Form 1099.

B. Plaintiff understands and agrees that she and her counsel are responsible (and not Defendants) for any tax liability respecting the payments set forth in Section II.A of this Agreement, including but not limited to liability for the amount, method or calculation of withholding tax to federal, state or local governments, and Plaintiff's portion of social security tax. Further, Plaintiff agrees to indemnify Defendants for all costs, including attorneys' fees, it incurs as a consequence of Plaintiff's failure to satisfy any tax obligations arising out of this Agreement.

C. Upon full execution of this Agreement, the parties agree that Plaintiff will cause to be filed a Joint Motion to Approve Settlement Agreement in a form acceptable to Defendants. Plaintiff agrees to the dismissal of the Action with prejudice, subject to the Court retaining jurisdiction to enforce the terms of this Agreement. Should the Court not approve the settlement, the parties agree that this Agreement shall be null and void, and Defendants shall have no obligation to make any payments pursuant to this Agreement.

D. Defendants' obligation to make the payments set forth in Section II.A is conditioned upon the receipt by Defendants' counsel, Fidlon Legal, PC, of (a) a completed IRS Form W-4 from Plaintiff and completed IRS Form W-9s from Plaintiff and her attorneys, Parks, Chesin & Walbert, P.C., and (b) notification via the Court's CM/ECF system of an Order entered by the Court approving this Agreement and dismissing the Action with prejudice and without additional payment of costs or attorneys' fees. The payments set forth in Section II.A shall be sent to Parks, Chesin & Walbert, P.C., 75 14th St NE 26th Floor, Atlanta, GA 30309 (Attention: Dustin L. Crawford, Esq.).

III. **GENERAL RELEASE:**

A. As a material inducement to Defendants to enter into this Agreement, subject only to the exceptions noted in Section III.C, below, Releasor hereby irrevocably and unconditionally releases, acquits, and forever discharges the Releasees, and all persons acting by, through, under or in concert with them, from any and all charges, complaints, claims, liabilities, obligations, promises, damages, causes of action, rights, demands, costs, lawsuits, debts and expenses, including but not limited to attorney fees and costs, actually incurred of any nature whatsoever, known or unknown, which Releasor now has, or claims to have, or which Releasor at any time heretofore had or claimed to have (collectively the "Released Claims"). Releasor further agrees to waive irrevocably any right to recover under any claim that may be filed with or by the Equal Employment Opportunity Commission or any other federal, state or local agency with respect to the work she performed for Ram Shai Ram.

B. Releasor understands that she is forever releasing and forgiving all known or unknown claims or causes of action which she brought or could have brought against Releasees in the Action or any other litigation, whether under federal, state, or local law. Releasor understands that the claims she is releasing might arise under many different laws (including statutes, regulations, other administrative guidance, and common law doctrines), such as the following:

1. <u>Anti-discrimination statutes</u>, such as Title VII, which prohibits discrimination and harassment based on race, color, national origin, religion, sex, and pregnancy, and prohibits retaliation; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act and Sections 503 and 504 of the Rehabilitation Act of 1973, which prohibit discrimination based on disability; Section 1981 of the Civil Rights Act of 1866, which prohibits discrimination on the basis of race, color or national origin and retaliation; the Age Discrimination in Employment Act of 1967, and Executive Order 11,141, which prohibit discrimination on the basis of age and retaliation, and any other federal, state, or local laws prohibiting employment discrimination.

2. <u>Federal employment statutes</u>, such as the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Fair Labor Standards Act of 1938, which regulates wage and hour matters; the Family and Medical Leave Act of 1993, which requires employers to provide leaves of absence under certain circumstances and prohibits retaliation; the WARN Act, which requires that advance notice be given of certain work force reductions; and any other federal laws relating to employment, such as veterans' reemployment rights laws.

3. <u>Other laws</u>, such as any federal, state, or local laws restricting an employer's right to terminate employees, or otherwise regulating the terms or conditions of employment; any federal, state, or local law enforcing express or implied employment contracts or requiring an employer to deal with employees fairly or in good faith; any other federal, state, or local laws providing recourse for alleged wrongful discharge, breach of contract, improper garnishment, assignment, or deduction from wages, health and/or safety violations, improper drug and/or alcohol testing, any tort, physical or personal injury, infliction of emotional distress, fraud, negligence, loss of consortium, negligent misrepresentation, negligent supervision, defamation, abusive litigation, and similar or related claims.

4. <u>Examples of Released Claims</u> include, but are not limited to the following (except to the extent explicitly preserved by Section III.C of this Agreement): (i) Releasor's claims or any related claims asserted in the Action; (ii) claims that in any way relate to or arise from any express or implied agreement or promise made to Releasor by any Releasee; (iii) claims that in any way relate to Releasor's employment with Ram Shai Ram or any predecessor entity, or the termination of that employment, such as claims for compensation, benefits, insurance premiums, bonuses, commissions, lost wages, travel expenses, or unused accrued vacation or sick pay; (iv) claims that in any way relate to allegations of alleged harassment, discrimination, and/or retaliation; (v) claims that in any way relate to any state law tort causes of action; and (vi) claims that relate to attorneys' fees, costs, expenses or other indemnities with respect to claims that Releasor is releasing.

C. Releasor is not releasing: (1) any claim that relates to her right to enforce this Agreement; (2) any rights or claims that arise after Releasor signs this Agreement; or (3) any claim that cannot be released by law.

IV. **KNOWING AND VOLUNTARY WAIVER AND RELEASE:**

   A. Releasor acknowledges that she has had reasonable and sufficient time to consider whether or not she desires to enter into this Agreement. It is understood and agreed that this Agreement is executed by Releasor knowingly and voluntarily. The parties also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement.

   B. As part of this consideration for the conditions of the settlement as set forth above, the signatories expressly warrant and represent that: (1) they are legally competent to execute this Agreement; and (2) there are no outstanding subrogation claims or liens of any type or character, by reason of the matters covered by the general release contained herein.

   C. Releasor has the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and she has, in fact, consulted with her legal counsel, Dustin L. Crawford, Esq. of Parks, Chesin & Walbert, P.C. and William S. Cleveland of Poole Huffman, LLC, prior to signing this Agreement. Releasor also acknowledges that before signing this Agreement, she has read and fully understood each paragraph herein.

V. **NO OTHER FILINGS:** Plaintiff represents that, except for the Action, she has not filed any complaints or charges against any of the Releasees with any federal, state or local court or agency that concern or relate to his employment with Ram Shai Ram or the termination thereof. Plaintiff agrees never to institute or aid in the institution or prosecution of any claim, action, complaint, charge or suit, absent subpoena, court order or other administrative or court procedure requiring Plaintiff's cooperation, whether at law or in equity, against the Releasees, in any court or administrative agency or before any other public or private tribunal, which in any way arises from or relates to the Released Claims.

VI. **NON-DISPARAGEMENT:** Plaintiff agrees not to make any oral or written statement or take any other action that disparages or criticizes the Releasees, Ram Shai Ram or their or its members, shareholders, owners, management, employees or practices, or that harms their or its good reputation.

VII. **COOPERATION:** Plaintiff agrees to cooperate with Ram Shai Ram in all investigations, inquiries, or litigation, whether in any judicial, administrative or other public, quasi-public or private forum, in which it is involved. Cooperation includes assistance in investigations, participation and providing truthful testimony in affidavits, depositions and at trial without having to be subpoenaed, assisting with discovery, and other reasonable activities requested by Ram Shai Ram and its attorneys.

VIII. **NON-ADMISSION:** Releasor acknowledges that the payments set forth herein do not constitute any admission of liability on the part of the Releasees, by whom liability is expressly denied. This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

4

**MISCELLANEOUS:**

A. ***Governing Law & Jurisdiction.*** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties agree that any disputes related to this Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of Georgia, Newnan Division.

B. ***No Assignment.*** Plaintiff represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, suit, debt, obligation, account, contract, agreement, covenant, guarantee, controversy, judgment, damage, claim, counterclaim, liability or demand of any nature whatsoever relating to any matter covered by this Agreement.

C. ***Successors.*** This Agreement shall be binding upon, enforceable by and inure to the benefit of Releasor's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees and the Releasees and any successor of the Releasees, but neither this Agreement nor any rights or payments arising hereunder may be assigned, pledged, transferred or hypothecated by Releasor.

D. ***Headings.*** Headings used in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement.

E. ***Entire Agreement.*** This Agreement constitutes the entire agreement between the Releasor and the Releasees pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by all parties.

F. ***Severability.*** Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken, and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

G. ***Counterparts.*** This Agreement may be executed in any number of counterparts, which counterparts considered together shall constitute a single, binding, valid, and enforceable Agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or by electronic mail as a .pdf file shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile or by electronic mail as a .pdf file shall be deemed to be their original signatures for all purposes.

I HAVE CAREFULLY READ AND UNDERSTAND THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE, WHICH INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

_____      8/11/2021
Kayla Shoulars                       Date

RAM SHAI RAM, INC.

By: _____            8-19-21
Tushar Patel                         Date
CEO

_____      8-19-21
Varsha Patel                         Date

_____      8-19-21
Tushar Patel, Individually           Date